**PSYCHIATRIC INSTITUTE OF WASH-INGTON, D.C., INC., Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 80–1161.

United States District Court, District of Columbia.

Nov. 24, 1980.

Martin J. Gaynes, Michael G. Scheininger, Bonner, Thompson, O'Connell & Middlekauff, Washington, D. C., for plaintiff.

Valerie Schurman, Asst. U. S. Atty., Civ. Div., Washington, D. C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on cross–motions for summary judgment. The court must review a final decision by the Secretary of Health and Human Services reversing a decision of the Provider Reimbursement Review Board (PRRB). The PRRB had awarded additional Medicare reimbursement to plaintiff to defray the costs of its Gerontological Treatment Center (GTC).

*Background*

Medicare recognizes that a hospital's costs are greater in Special Care Units than in other units, and computes reimbursable costs in such a way that results in higher payments to providers for patients treated in Special Care Units (SCU). *See* 42 C.F.R. § 405.452(d)(8). Plaintiff operates a psychiatric hospital in the District of Columbia. In 1974 plaintiff began operating a special inpatient treatment center for the diagnosis and treatment of persons who exhibited emotional problems associated with aging and accompanied by medical or neurological disabilities. In its 1975 cost report, plaintiff separately identified the costs of the GTC and treated it as a special care unit pursuant to 42 C.F.R. § 405.452(d)(8).

On May 31, 1978, defendant's fiscal intermediary disallowed the additional costs computed by the plaintiff for its special care unit on the ground that the GTC was not a special care unit under the applicable regulation, 42 C.F.R. § 405.452(d)(10). Pursuant to 42 U.S.C. § 1395oo, plaintiff appealed the Intermediary's decision to the PRRB. The issue before the board was

whether plaintiff's GTC unit qualified as a special care unit.

The first decision of the PRRB resulted in a deadlock. The PRRB issued a second decision on January 3, 1980, reversing the intermediary's determination and holding that the GTC was a special care unit. One member of the Board dissented from this decision. On March 7, 1980, the Deputy Administrator of the Health Care Finance Administration, acting on behalf of the Secretary of Health and Human Services, reversed the decision of the PRRB. The Deputy Administrator determined that the GTC met all of the requirements of 42 C.F.R. § 405.452(d)(10)[1] except the requirement that the care supplied by the unit must be extraordinary and on a concentrated and continuous basis. This appeal followed.

*Discussion*

The scope of review of the Secretary's findings in this case is set forth in 5 U.S.C. § 706. Upon reviewing the administrative record, the Secretary's decision must be set aside if it is unsupported by substantial evidence, arbitrary, capricious, or otherwise not in accordance with law. The issue before the court is whether the GTC provided care that was extraordinary and on a concentrated and continuous basis.

The Secretary's decision that the GTC did not render extraordinary care on a concentrated and continuous basis is correctly characterized by plaintiff as resting on two grounds. First, the decision points out that the GTC exhibited characteristics not associated with intensive care units. The admittance and discharge patterns differed from those usually associated with intensive care units (Ad.Rec. at 19); the number of nurses on duty varied with the shifts (Ad. Rec. at 20); and the per diem charges were less in the GTC than in the plaintiff's intensive care unit (*Id.*). The second ground for

the Secretary's decision is that the GTC's patients were not critically ill. The decision points out that "One does not associate dining room privileges, pass privileges, smoking privileges, and liberal visiting hours with the critically ill patient." Ad.Rec. at 19.

The defendant points out that the examples of special care units listed in the regulation—burn, coronary care, pulmonary care, trauma and intensive care—establish a frame of reference against which newly—established units can be measured to determine whether they qualify as special care units. In addition, the defendant notes that all of the examples listed in the regulation provide care involving life saving services, often in a crisis situation.

Identical contentions were made to the court in *Rolling Hills Hospital, Inc. v. PRRB*, No. 76–1878 (E.D.Pa.1977) (CCH) Medicare & Medicaid Guide [1977 Transfer Binder] ¶ 28,745. There a rehabilitation unit which provided health care services for disabled and handicapped individuals sought classification as a special care unit and the issue was whether the care provided was extraordinary, continuous, and concentrated. The court reasoned that,

> In effect, the Intermediary indicates that a special care unit must be an intensive care unit. However, "intensive" care is not an element required by 20 [now 42] C.F.R. 405.
>
> Further, the regulation does *not* require [that] special care units deal in life or death situations.
>
> The intermediary thus seems to be applying extra criteria in determining that Rolling Hills' Rehabilitation unit is not a special care unit. Such a course is unjustified by the law.

*Id.* at 10,620. *But cf. Glendale Adventist Medical Center v. Califano*, No. 78–937

1. That section provides:

   To be considered an intensive care unit, coronary care unit, or other special care inpatient hospital unit, the unit must be in a hospital, must be one in which the care required is extraordinary *and on a concentrated basis* and must be physically identifiable as separate from general patient care areas. There

   shall be specific written policies for each of such designated units which include, but are not limited to burn, coronary care, pulmonary care, trauma, and intensive care units but exclude postoperative recovery rooms, post—anesthesia recovery rooms, or maternity labor rooms.

(C.D.Cal.1979) (CCH) Medicare & Medicaid Guide [1979–1 Transfer Binder] ¶ 29,573, *appeal pending*.

Moreover, the Secretary's decision explicitly relied on an updated version of the *Provider Reimbursement Manual*, § 2202.7.[2] Ad.Rec. at 15. The *Manual* section relied upon was issued in June, 1977, two years after the end of GTC's fiscal year which is at issue in this case. Ad.Rec. at 510. It introduced new criteria into the definition of a special care unit, including the need for life–saving nursing services; the availability of life–saving equipment; the equivalency of nursing services with those provided in an intensive care unit; and patient transfer procedures. Retroactive application of § 2202.7 was recently held impermissible in *John Muir Memorial Hospital, Inc. v. Harris*, No. 79–2686 (N.D.Cal. June 25, 1980) (CCH) Medicare and Medicaid Guide [1980 Transfer Binder] ¶ 30,580 at 10,395. While the special care unit in *Muir* treated patients who were critically ill, the holding that § 2202.7 cannot be retroactively applied is relevant to this case even though the treatment afforded by the GTC is different than that in *Muir*.

The provision of the *Provider Reimbursement Manual* in existence during Fiscal Year 1975 was § 2202.2, which provides

> To be considered a special care inpatient hospital unit, the unit must be in a hospital, must be one in which the care required is extraordinary and on a concentrated and continuous basis and must be physically identifiable as separate from general care areas. There shall be specific written policies for each of such designated units which include, but are not limited to, burn, coronary care, pulmonary care, trauma, and intensive care units, but exclude postoperative recovery rooms, postanesthesia recovery rooms, or maternity labor rooms. Segregation of patients to specific areas by type of illness or age, such as psychiatric, neuropsychiatric, geriatric, pediatric, mental health, rehabilitation, etc., does not qualify as special care inpatient hospital units for purposes of apportionment unless the above requirements are met.

This provision clearly contemplated that psychiatric and geriatric units such as the GTC could qualify for treatment as special care units. Section 2202.7 added in 1977, is not merely a further explanation of § 2202.-2, it is a substantive change because it adds, *inter alia*, the requirement of life–saving services, which automatically excludes psychiatric, geriatric, mental health, and other units listed in § 2202.2 from treatment as special care units.

Stripped of its impermissible reliance on § 2202.7 and the notions that a special care unit must be similar to an intensive care unit and treat critically–ill patients, the Secretary's decision is not supported by substantive evidence. The GTC's treatment team consisted of an internist, a psychiatrist, a neurologist, a psychiatric social worker, and a nursing staff trained in geriatric nursing. Ad.Rec. at 21. The nursing staff per patient ratio was 80% greater than in the rest of the hospital (Ad.Rec. 267, 386) and more highly–trained (Ad.Rec. 163, 178, 336). The nursing staff was on duty 24 hours a day (Ad.Rec. 170, 208, 250, 254). Although the number of nurses on duty varied with the shifts, as the *Rolling Hills* court noted, "defendants would not contend that the rehabilitation therapy should continue unabated on the 11:00 p. m. to 7:00 a. m. shift." *Id.* at 10,620. Almost all the patients admitted to the GTC had been treatment failures in other hospital programs (Ad.Rec. 204, 257), yet the GTC was able to restore almost 75% of these patients to their maximum functioning level (Ad. Rec. 169, 207).

No evidence in the record suggests that care was not continuous because GTC patients were occasionally given passes to leave the hospital. On the contrary, the evidence indicates that a pass in a psychiatric unit is part of the treatment program for some patients and that passes were used as a therapeutic device to test patients' progress. Ad.Rec. at 170.

---

**2.** It is not necessary to reach the issue of whether § 2202.7 was promulgated in violation of the rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. § 553.

Nothing in the record indicates that the care given to patients in the GTC was other than extraordinary, continuous, and concentrated. The court in *Rolling Hills* noted that the "degree of care being rendered in the Rehabilitation Unit and that being rendered in the routine medical–surgical unit is markedly different." *Id.* at 10,620. The same is true here. The relevant comparison is between the care rendered in the GTC and the care routinely rendered in the hospital, and the record is clear that GTC patients received substantially more care. Even the Secretary's decision acknowledged that the GTC provided more care than routine care when it characterized GTC as "a third level of care."