**PSYCHIATRIC INSTITUTE OF WASHINGTON, D. C., INC.**

v.

**Richard S. SCHWEIKER, Secretary of Health & Human Services, Appellant.**

**No. 81–1110.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1981.

Decided Dec. 15, 1981.

Evelyn Bradford, Atty., Dept. of Health and Human Services, Los Angeles, Cal., with whom Thomas S. Martin, Acting Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellant. Kenneth M. Raisler and Valerie Schurman, Asst. U. S. Attys., and Katherine S. Gruenheck, Atty., Dept. of Justice, Washington, D. C., entered appearances for appellant.

Michael G. Scheininger, Washington, D. C., with whom Martin J. Gaynes, Washington, D. C., was on the brief, for appellee.

Patric Hooper, Los Angeles, Cal., was on the brief for amici curiae Los Alamitos General Hospital, Inc. et al., urging affirmance.

Before WRIGHT, Circuit Judge, McGOWAN, Senior Circuit Judge, and MIKVA, Circuit Judge.

Opinion for the court per curiam.

PER CURIAM:

The Secretary of Health and Human Services appeals from summary judgment for appellee on a petition for review of the Secretary's determination that appellee's "Gerontological Treatment Center" was not a "Special Care Unit" within the meaning of 42 C.F.R. § 405.452(d)(10) as it appeared in fiscal year 1975, see 37 Fed.Reg. 10354 (1972). Because the Secretary's interpretation of this Medicare regulation was reasonable, and not contrary to law, and because substantial evidence in the record establishes that appellee's Center was not a Special Care Unit according to the Secretary's interpretation, we reverse.

In this case the Secretary was called upon to resolve an ambiguity in a Medicare regulation that, in effect, classified all relevant inpatient hospital care as occurring within either a "Routine Care" center or a "Special Care Unit." See 42 C.F.R. § 405.452(d) (1975). The basic statutory provisions authorizing such a regulation do not direct the Secretary to distinguish between the two classes of hospital care, see 42 U.S.C. §§ 1302, 1395x(v)(1)(A) (1976), and for the first five years of its operation the Medicare program recognized only one class of care for purposes of reimbursement. Thus the Special Care Unit regulation depended entirely on the Secretary's judgment that recognizing two classes of hospital care would best further the purposes of the Medicare program, and the initial decision where to draw the line was for the Secretary alone. Cf. State of Florida v. Mathews, 526 F.2d 319, 323 (5th Cir. 1976) (Medicaid statute). To the extent the resulting regulation required further interpretation to apply it to individual situations, the Medicare program provides several initial levels of review. See 42 U.S.C. § 1395oo (1976). But the Secretary retains full authority to make final determinations as to how the Medicare reimbursement regulations should be applied. Id. § 1395oo(f)(1).

Judicial review of such determinations is limited by the familiar standards of 5 U.S.C. § 706 (1976). Furthermore, where the decision under review involves an agency's interpretation of its own regulations, forming part of a complex statutory scheme which the agency is charged with adminis-

tering, the arguments for deference to administrative expertise are at their strongest. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). A reviewing court may not set aside the agency's interpretation merely because another interpretation was possible and seems better, so long as the agency's interpretation is within the range of reasonable meanings that the words of the regulation admit. *FEC v. Democratic Senatorial Campaign Committee,* —— U.S. ——, ——, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981); *cf. Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977) (agency interpretations of ambiguous words in statutes).

In the case before us the regulation at issue was ambiguous. Special Care Units were defined as those providing "extraordinary and concentrated" care "on a continuous basis," like one set of facilities—chiefly "intensive care units"—and unlike some other facilities—such as "maternity labor rooms." To determine whether appellee's Gerontological Treatment Center came within the terms of the definition, the Secretary compared it to intensive care units and found that the degree of care it provided was less concentrated and continuous. *See* Joint Appendix at 19–20. Appellee argues that its Center should have been compared to routine care facilities instead, and that the care it provided was considerably more concentrated and continuous than that provided in routine care facilities. While appellee's interpretation has much to recommend it, neither this court nor the District Court, 501 F.Supp. 314, is entitled to hold that the Secretary's equally tenable interpretation was contrary to law.* And, given that the Secretary's interpretation must stand, there can be no question, considering the record as a whole, that the level of care in appellee's Center was less concentrated and continuous than the care in the facilities to which the Secretary compared it, no matter how it stood in relation to other care routinely available for the disorders it sought to treat.

This is not to say that we are unconcerned about some implications of the Secretary's decision that are peculiar to this case. Unlike the medical facilities that have been the subject of litigation elsewhere, the Center involved in this case was designed to treat conditions that by definition only older patients suffer. The Medicare program also primarily serves older patients. Thus the percentage of Medicare beneficiaries in the population that appellee's Center sought to serve was much higher than the percentage of Medicare beneficiaries served by other intermediate-level hospital facilities, such as the "Definite Care Unit" at issue in *John Muir Memorial Hospital, Inc. v. Schweiker,* 664 F.2d 1337 (9th Cir. 1981). The Secretary's decision to deny Special Care Unit designation will not mean that a facility must cease operation, or that no hospital may hazard a similar unit for non-Medicare patients, as long as the facility treats the same percentage of Medicare patients as other units providing routine care. In contrast, the Medicare program's failure to reimburse the reasonable costs of treatments applicable mainly to Medicare beneficiaries will probably mean that no hospital will be willing to provide such treatments to anyone, Medicare beneficiary or not. We are concerned lest the Secretary's policy inhibit innovation in treatment of older people to such an extent that cost-effective treatments for the conditions that afflict them may never be developed and proved. Yet we recognize the fiscal obligations of the Secretary as well, and, as a reviewing court, we leave the fundamental choice as to which course of action will provide the greatest amount of care to Congress and its delegate.

---

* We note that the Ninth Circuit has twice sustained similar interpretations by the Secretary of this same regulation. *See John Muir Memorial Hospital, Inc. v. Schweiker,* 664 F.2d 1337 (9th Cir. 1981); *White Memorial Medical Center v. Schweiker,* 640 F.2d 1126 (9th Cir. 1981);

*accord, Lexington County Hospital v. Schweiker,* D.S.C. Civil Action No. 80–229–9 (Aug. 27, 1981). *Contra, Rolling Hills Hospital, Inc. v. Provider Reimbursement Review Board,* E.D.Pa. Civil Action No. 76–1878 (Nov. 10, 1977).

Accordingly, the judgment of the District Court is reversed, and the District Court is hereby directed to enter summary judgment for the Secretary.

*So ordered.*