*Accordingly, we reverse the order of the district court and direct the judgment be entered in favor of Martin.*

## ST. ELIZABETH'S HOSPITAL OF BOSTON, Plaintiff, Appellant,

v.

## SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

### No. 84-1388.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1984.

Decided Oct. 18, 1984.

Gary A. Rosenberg, Boston, Mass., with whom John H. Mason, and Ropes & Gray, Boston, Mass., were on brief, for plaintiff, appellant.

Evan Slavitt, Asst. U.S. Atty., William F. Weld, U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Circuit Judge, ALDRICH and COWEN,* Senior Circuit Judges.

* Of the Federal Circuit, sitting by designation.

PER CURIAM.

St. Elizabeth's Hospital of Boston appeals from the district court's affirmance of a decision by the Secretary of Health and Human Services. The Secretary found that the Hospital's neurology/neurosurgery unit and its interim coronary care unit were not special care units within the meaning of 42 C.F.R. § 405.452(d)(10) (1976). Because the Secretary's determinations were supported by substantial evidence we affirm on the basis of the opinion below. We feel it is necessary only to add the following comments.

First, we note that some isolated statements in defendant's brief might suggest that the test of whether a unit qualifies as special care, is to be determined by whether it is as special, or intense, as that particular hospital's most intensive units, regardless of whether it might have otherwise qualified. This impression would be incorrect. Rather, defendant's standard interpretation of the Regulation is that a unit, regardless of the existence, vel non, of other what might be called special units, does not qualify as special unless it is truly intensive. Comparisons were made in this hospital merely to show that the units in question were not truly intensive. We cannot say that defendant could not make that interpretation, or that, so viewed, her decision here was erroneous.

Second, we agree with appellant that the doctrine of *ejusdem generis* is applicable as a rule of construction only where the meaning of the regulation is unclear. *United States v. Turkette*, 452 U.S. 576, 581, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). However we find that the wording of the regulation is ambiguous and does not offer a clear statement of the Secretary's intent. Therefore, the doctrine of *ejusdem generis* is applicable and the regulation may reasonably be construed to require special care units to provide care "of the same kind" as that provided by an intensive care or coronary care unit. *See White Memorial Medical Center v. Schweiker*, 640 F.2d 1126, 1129 (9th Cir. 1981).

*The judgment of the district court is affirmed.*

APPENDIX

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ST. ELIZABETH'S HOSPITAL OF BOSTON, Plaintiff,

V.

MARGARET HECKLER, SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant

CIVIL ACTION NO. 82–1869–S

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

April 6, 1984

SKINNER, District Judge.

The plaintiff hospital brings this action to compel the Medicare program to reimburse it for certain costs incurred in fiscal years ending on September 30, 1976, 1977 and 1978. The plaintiff maintained a Neurology/Neurosurgery Unit ("Neuro Unit"), and an Interim Coronary Care Unit ("ICCU") during these years. Blue Cross of Massachusetts, the fiscal intermediary for the Medicare program in Massachusetts, classified the costs of these units as general service costs, rather than as special care costs. This classification reduced Medicare's reimbursement to the plaintiff by $33,400 in 1976, $25,000 in 1977, and $36,000 in 1978. The Provider Reimbursement Review Board ("Board") affirmed Blue Cross, and the plaintiff appealed from the Board to this court as allowed by 42 U.S.C. § 1395oo. Both parties have moved for summary judgment.

The Administrative Procedure Act, 5 U.S.C. § 706, provides the standard of review. 42 U.S.C. § 1395oo(f)(1). Under the Administrative Procedure Act, this court may set aside an administrative decision if it finds that the decision is "arbitrary, capricious, an abuse of discretion, or other-

wise not in accordance with law" or if the decision is "unsupported by substantial evidence". 5 U.S.C. § 706(2). In a field as complex as Medicare reimbursement accounting, a decision of the Secretary of Health and Human Services should be upheld unless it is "the expression of a whim rather than an exercise of judgment". *Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service*, 689 F.2d 1112, 1117 (1st Cir.1982).

For the years in question, the governing regulation was 42 C.F.R. § 405.452(d)(10) which provided that

> To be considered an intensive care unit, coronary care unit, or other special care inpatient hospital unit, the unit must be in a hospital, must be one in which the care required is extraordinary and on a concentrated and continuous basis and must be physically identifiable as separate from general patient areas. There shall be specific written policies for each of such designated units which include, but are not limited to, burn, coronary care, pulmonary care, trauma, and intensive care units, but exclude post-operative recovery rooms, postanesthesia recovery rooms, or maternity labor rooms.

The issue in contest is the same for both the Neuro Unit and the ICCU: Was the care provided in the units "extraordinary and on a concentrated and continuous basis"?

The record shows that the care in both units was more extraordinary, concentrated and continuous than the care in the general service wards of the hospital, but less so than in the intensive care unit of the hospital.

### Comparison of Care Levels

| | Routine Service Wards | ICCU | Neuro Unit | Recognized Special Care |
|---|---|---|---|---|
| Per Diem Charges, 1977 | $125–142 | 230 | 279 | 360–385 |
| February 1, 1978 | 137–158 | 255 | 304 | 360–410 |
| Nursing Coverage – Hours/Patient Day | | | | |
| FY 1977 | 5.16 | 7.89 | 9.96 | 19.46 |
| FY 1978 | 5.17 | 8.35 | 13.17 | 21.51 |
| Nurse/Patient Ratio | | | | |
| 1st Shift | .27 | .5 | .82 | .82 |
| 2nd Shift | .22 | .25 | .61 | .71 |
| 3rd Shift | .14 | .25 | .61 | .75 |

The hospital's director of medicine conceded before the Board that the level of care in the ICCU is between the level of care in the routine areas of the hospital and the level of care in the other special care units. The director of medicine insisted that the care in the Neuro Unit was not less intense, but rather different in nature from the care in the other special care units. The Board had substantial evidence for its rejection of the director's position. In addition to the statistics above, the board had evidence that (a) the visiting hours were freer in the Neuro Unit than in other special care units; (b) direct visual and telemetric monitoring was less in the Neuro Unit than in other special care units. On the other hand, Medicare's intermediary's auditor conceded before the Board that the patients in the ICCU and the Neuro Unit could not be effectively cared for in the routine areas of the hospital.

The legal issue before me is this: If the levels of care in the ICCU and the Neuro Unit are lower than in the recognized special care units in the hospital, but higher than in the general service wards, should the units be classified as general service or as special care? Although the Provider Reimbursement Review Board has wavered on this question, the Administrator of the

Health Care Financing Agency, the higher administrative authority, has taken the consistent position that in order to qualify as a special care unit, a unit must provide care at the level of an intensive care unit. *Carraway Methodist Medical Center v. Blue Cross Association*, CCH Medicare and Medicaid, ¶ 32,291 (1982), reversed by Administrator H.C.F.A., ¶ 32,303; *St. Elizabeth Hospital (Appleton, Wis.) v. Blue Cross Association*, CCH Medicare and Medicaid Guide ¶ 31,809 (1982), reversed by Administrator H.C.F.A., ¶ 31,932; *Sun Towers Hospital v. Blue Cross Association*, CCH Medicare and Medicaid Guide ¶ 30,612 (1980), reversed by Administrator H.C.F.A., ¶ 30,664; *PRRB Dec. No. 77-D76*, CCH Medicare and Medicaid Guide ¶ 28,678 (1977), reversed by Administrator H.C.F.A., ¶ 28,897. *See St. Elizabeth Hospital (Appleton, Wis.), supra* ¶ 31,932 for listing of other H.C.F.A. decisions consistent with this position.

With a few exceptions, this position has been upheld on appeal in the federal courts. *See Villa View Community Hospital, Inc. v. Heckler*, 728 F.2d 539 (D.C.Cir., 1984) (slip opinion); *Sun Towers, Inc. v. Schweiker*, 694 F.2d 1036 (5th Cir.1983); *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812 (D.C. Cir.1981); *John Muir Memorial Hospital, Inc. v. Schweiker*, 664 F.2d 1337 (9th Cir. 1981); *White Memorial Medical Center v. Schweiker*, 640 F.2d 1126 (9th Cir.1981); *Lexington County Hospital v. Schweiker*, CCH Medicare and Medicaid Guide ¶ 31,516 (D.S.C.1981). *But see Community Hospital of Indianapolis, Inc. v. Schweiker*, CCH Medicare and Medicaid Guide ¶ 33,087 (7th Cir.1983); *Rolling Hill Hospital, Inc. v. PRRB*, CCH Medicare and Medicaid Guide ¶ 28,745 (E.D.Penn., 1977).

In *Villa View, supra* at 543, the Circuit Court of Appeals for the District of Columbia reiterated its concern that the Secretary's restrictive application of this regulation might discourage cost-saving innovation in the treatment of older patients. I share that concern. Especially in areas like cost reimbursement, however, where a court viewing a regulation in isolation may err, our court of Appeals clearly favors deference to the Secretary's interpretation of her regulations. *See, Cheshire Hospital, supra.*

Accordingly, the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is ALLOWED. Judgment shall enter for the defendant.