Betty J. **GARNER**

v.

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT and Metropolitan Life Insurance Co.**

Civ. A. No. 84–5570.

United States District Court,
E.D. Pennsylvania.

April 8, 1986.

Jefferson C. Crosby, Lancaster, Pa., for plaintiff.

Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., for Office of Personnel Management.

E. David Chanin, Philadelphia, Pa., for Metropolitan Life.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The above captioned action presents this Court with a most unique case. For this reason, and also to better understand our disposition of the parties' cross-motions for summary judgment, the facts of this case merit recitation.

The plaintiff's husband, Bernard R. Garner, was employed by the Department of the Navy's Fleet Materials Support Office in Mechanicsburg, Pennsylvania, as a civilian computer systems analyst. On May 21, 1982, he traveled alone to the Province of Quebec in northern Canada, purportedly on a fishing trip from which he was to return a few days later. A bush pilot flew him into a camp located in an area accessible only by pontoon aircraft. The pilot returned a few days later to recover his passenger and found all the materials he had deposited at the camp site substantially

undisturbed. The only telltale signs of his passenger's possible whereabouts was a capsized fishing boat floating upon the lake.

The subsequent search of the area by Canadian authorities produced no corpus delecti. Presuming that Mr. Garner had drowned, the Canadian authorities declared him officially dead upon their issuance of a death certificate.

The plaintiff, as the deceased's widow, thereafter obtained a decree from the Lancaster County Court of Common Pleas declaring her husband to have presumptively died on May 24, 1982. She was appointed administratrix of her husband's estate and proceeded to claim the benefits due her under her "deceased" husband's Federal Employee Group Life Insurance (FEGLI) policy. Interestingly—an appropriate term based upon what would later occur—Mr. Garner had during the life insurance "open season" in March 1981, adjusted his coverage upwards to the maximum available.

The Office of Federal Employees Group Life Insurance (OFEGLI), an administrative unit of the Metropolitan Life Insurance Company, the insurance carrier with which the Office of Personnel Management (OPM) currently contracts for life insurance coverage for eligible federal employees, initially questioned Mrs. Garner's claim because her husband's body had never been recovered. However, upon issuance of the death certificate, Metropolitan paid Mrs. Garner's FEGLI claim in full, a total of $205,918.61.

Some time in July, 1983, the Garners' daughter contacted the OFEGLI to inform it that her father was alive, and had been living with her and her family since shortly after his feigned death in Canada. The OFEGLI forwarded this information to OPM, which notified the Department of Justice. Meanwhile, Mr. Garner returned to his home in Pennsylvania and in a letter to his former employer, *i.e.*, the Navy, dated September 4, 1983, requested that he be reinstated to the job from which he had absented himself since May, 1982. The Navy, of course, had separated Mr. Garner from service based upon his presumed death. According to OPM's Memorandum in support of its motion, at page 3, Mr. Garner, in explanation of his absence, stated he had been "lost in the woods, chased by bears and rescued by a pair of French Canadian fur trappers who 'nursed him back to health'." Mr. Garner further claimed that although he returned to civilization December, 1982, he did not contact his wife because he feared the shock it might induce.

The Navy now faced the predicament of dealing with Mr. Garner's reappearance. He had been separated from employment because of his death, but he was not, in fact, dead. Therefore, in the interest of avoiding any violations of the constitutional, statutory or regulatory rights which might be due Mr. Garner, the Navy reinstated him on November 1, 1983, and on November 2, 1983, informed him of their intent to separate him involuntarily for "excessive unauthorized absence".[1] Garner, in response, resigned his position effective November 7, 1983.

Bernard R. Garner died on November 13, 1983.[2]

Subsequent to her husband's "second" death, the plaintiff was convicted of federal charges by a jury in the United States District Court for the Middle District of Pennsylvania based upon her participation in the scheme to defraud the defendants.

---

**1.** The Navy revised Garner's employment records to indicate that he had been on a non-pay status during his absence and was returning to active duty status as a computer systems analyst. (See deposition of James C. Bush, Exs. 1, 4, 5, 6 and 7).

**2.** The parties do not dispute the fact of Mr. Garner's death on November 13, 1983. There is apparently some dispute as to the manner of his demise. OPM in its memorandum asserts Garner died while undergoing coronary by-pass surgery. (See also deposition of James C. Bush, Ex. 2). The plaintiff in her memorandum, however, denies this and asserts that her husband suffered a heart attack and died at his residence. This factual discrepancy is immaterial to our disposition of the case for the manner of Garner's death is irrelevant.

The Court imposed a sentence upon Mrs. Garner which included restitution of the monies she had received. She returned over half of the money, and executed a judgment note in favor of Metropolitan for the unpaid balance. (See Answer and Counterclaim of Metropolitan, ¶¶ 36 and 37, and Ex. A., attached thereto).

The plaintiff, subsequent to both her husband's death and her conviction had, as the government describes it, the "audacity" to file another claim for FEGLI benefits based upon her husband's legitimate death. Mrs. Garner's claim, understandably, caused much confusion among the Navy, OPM and OFEGLI as to how to respond. OPM, on May 2, 1984, notified OFEGLI that Mr. Garner was not covered by the FEGLI plan and that no payments should be made to his widow. (See deposition of James C. Bush, Ex. 9). OPM, according to the government's memorandum, informed the Navy, as the deceased's employing agency, of its determination on May 14, 1984. Ironically, when the Navy reinstated Garner, it reinstated the same amount of life insurance coverage he had carried when he disappeared and, in fact, made appropriate deductions from his salary for such coverage. (See deposition of James C. Bush, Exs. 5, 6 and 7).

Regardless of OPM's instructions to the contrary, the Navy issued an "Agency Certification of Insured Status" to the plaintiff on July 17, 1984.[3] (See deposition of James C. Bush, Ex. 8). Nevertheless, OFEGLI

continued to deny Mrs. Garner's claim based upon OPM's determination that her husband was not a covered employee. (See deposition of James C. Bush, Exs. 9 and 10). Mrs. Garner, in response, instituted this action seeking payment of the benefits claimed to be due her and recovery of the consequential damages she has allegedly suffered as a result of the defendants' denial of her claim.

The sole issue is whether, at the time of his death on November 13, 1983, Bernard R. Garner was covered by FEGLI.[4] More specifically, we must decide whether, as the government argues, Mr. Garner was excluded from such coverage as "an employee whose employment (was) of uncertain or purely temporary duration ..." under 5 U.S.C. § 8716 and 5 CFR § 870.-202(a)(2).[5]

Congress, when it enacted the relevant statutes, 5 U.S.C. § 8701, *et seq.*, to provide federal employees with group life insurance, bestowed wide latitude upon OPM to promulgate regulations to administer the Program. *See* 5 U.S.C. § 8716. Pursuant to this authority, OPM promulgated 5 CFR § 870.202(a)(2), the regulation upon which it relies as authority for denial of the plaintiff's claim. The government argues OPM's interpretation of § 870.202(a)(2) must be given great deference, and even controlling weight, since the construction originated with a high-ranking agency official, *i.e.*, OPM's Associate Director for Compensation.[6] The record discloses, how-

---

**3.** Upon the death of an employee covered by FEGLI, the employing agency issues a "Certificate of Insured Status" to the designated beneficiary or, if no such designation was made, to the appropriate beneficiary under the applicable regulations. The Certificate is then presented to the carrier.

**4.** Although Mr. Garner's employment by the Navy ended on November 7, 1983, coverage under FEGLI, assuming such existed, continued for 31 days after his date of resignation. (Deposition of James C. Bush, Ex. 8).

**5.** The government in its memorandum at page 8 indicates there may be some question as to the propriety of the Navy's reinstatement of Mr. Garner; however, the government makes no

further reference to or argument regarding this issue. Therefore, we consider the government as conceding that Garner was a federal employee until November 7, 1983, and we need only resolve the question of his "status" as such an employee.

**6.** While the government cites Associate Director for Compensation for OPM James Morrison's letters of May 2 and May 15, 1984, to a Metropolitan vice-president as interpretations of its own regulations, the reasons stated in said letters for denying coverage do not fully comport with the arguments proffered by the government in its motion. The letter of May 2 makes no reference to § 870.202(a)(2), but rather, states, "It is the position of this agency that at the time of his death, *Mr. Garner was not a*

ever, that all such interpretations occurred after the plaintiff had asserted her claim.

■ The rules of administrative law regarding the deference a court should give to an agency's construction of its regulations are well-settled. It is indeed true that an agency's interpretation of the statutes it administers and the regulations promulgated pursuant to such statutes are entitled to deference by a court reviewing an agency action. Further, the degree of such deference is directly proportional to the complexity of the statutes and regulations involved based upon the expertise developed by the agency in administering the statutes and regulations. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and *Butler County Memorial Hospital v. Heckler*, 780 F.2d 352 (3d Cir. 1985). Few of these principles apply to this action however. The statutory and regulatory scheme involved is not complex and is, in fact, relatively simple. OPM's interpretation of § 870.202(a)(2), in addition, was not a contemporaneous or prior construction, but rather, occurred well after this situation developed. As recognized by the Temporary Emergency Court of Appeals:

> deference to an agency's 'interpretation', ... is not a hard and fast rule. The weight to be given to an administrative interpretation depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements and all those factors which give it power to persuade if lacking power to control'. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944).

*Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1056 (Temp.Em. Court of Appeals 1978). For these reasons, we find OPM's construction of § 870.202(a)(2) is not entitled to controlling weight. Nevertheless, it is not the role of this Court to impose its own construction of § 870.-202(a)(2) upon OPM, and we must defer to its interpretation of the section so long as it is reasonable. The reasonableness of the agency's interpretation is based on an analysis of whether its construction "is within the range of reasonable meanings that the words of the regulation admit". *Butler County Memorial Hospital v. Heckler*, 780 F.2d 352, 356, quoting *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker*, 669 F.2d 812, 813–14 (D.C. Cir.1981) (per curiam). In this regard, "we need not defer to the agency ... if its interpretation is plainly inconsistent with the wording of the regulation or otherwise deprives (the) affected parties of fair notice of the agency's intentions". *Silvis v. Heckler*, 578 F.Supp. 1401, 1403 (W.D.Pa. 1984).

Webster's defines "uncertain" as "1: indefinite, indeterminate. 2: not certain to occur. 3: not reliable. 4a: not known beyond doubt. b: not having certain knowledge. c: not clearly identified or defined. 5: not constant". *Webster's New Collegiate Dictionary*, 1975. The same source defines "temporary" as "lasting for a limited time". *Id.* Based upon these definitions of the terms uncertain and temporary, we find OPM's construction of § 870.202(a)(2) is completely within the range of reasonable meanings which may logically and reasonably be drawn from the words of the regulation. Similarly, we cannot agree with the plaintiff's argument that OPM's application of the regulation is plainly inconsistent with the wording of § 870.202(a)(2) or otherwise deprives her of fair notice that it could be so applied.

■ We are not dealing with a dedicated federal employee who had continually served at his post without interruption, but had been served with a notice of termi-

---

Federal employee, his job tenure having been terminated because he had abandoned his position". (Emphasis added). Mr. Morrison in the October 15 letter similarly stated that, "It is the position of this agency that at the time of his death, *Mr. Garner was not a Federal employee*, had no FEGLI coverage, and that no life insur-

ance benefits were payable. Mr. Garner should be regarded as *terminated for voluntarily abandoning his* position, effective as of the date that all applicable leave was used..." (Emphasis added). Mr. Morrison does cite § 870.202(a)(2) later in his second letter as additional authority for denial of Mrs. Garner's claim.

nation for some other cause, *e.g.*, incompetence. We are dealing with a situation involving an employee who had abandoned his position, and thus had not served at his post without interruption, but was reinstated so he could be formally terminated. Based on these facts, we believe the deceased's reinstatement, *i.e.*, his employment, was of the uncertain or temporary duration described in § 870.202(a)(2) as construed by OPM.

Our task is to determine whether OPM's interpretation of § 870.202(a)(2) is unreasonable. We find that it is not. The plaintiff has failed to persuade us that the words of the regulation should be given other than their ordinary meaning. See *Chrobak v. Metropolitan Life Insurance Company*, 517 F.2d 883 (7th Cir.1975).

The next step in our analysis is to determine whether OPM's application of § 870.202(a)(2) to the deceased is prohibited by its failure to consult with Mr. Garner's employing agency, *i.e.*, the Navy, as required by 5 U.S.C. § 8716(b).[7] The statutory scheme involved grants OPM plenary authority to promulgate regulations to administer the Program. The statute does not condition this authority upon such a consultation. Thus, while an employing agency may disapprove of the proposed regulation, such disapproval does not prohibit OPM from implementing the regulation. The employing agency, in other words, does not possess a veto power over OPM. We believe the statute provides for

such a consultation merely as a device for insuring the orderly operation of government, and not as a means for an employing agency to override OPM. Therefore, we do not believe OPM is prohibited from applying § 870.202(a)(2) to the deceased due to its failure to consult as prescribed by § 8716(b).[8]

For the reasons stated above, we grant the defendants' motion for summary judgment and deny the plaintiff's motion for partial summary judgment.[9]

---

7. § 8716 provides:
   (a) The Office of Personnel Management may prescribe regulations necessary to carry out the purposes of this chapter.
   (b) The regulations of the Office may prescribe the time at which and the conditions under which an employee is eligible for coverage under this chapter. The Office, after consulting the head of the agency or other employing authority concerned, may exclude an employee on the basis of the nature and type of employment or conditions pertaining to it ...

8. The plaintiff in Count II of her Complaint, §§ 26–28, alleges the government is promissorily estopped from denying Mr. Garner was covered by FEGLI. She fails, however, to address this issue either in her memorandum in opposition to the defendants' motion for summary

judgment or in her motion for partial summary judgment. We would, therefore, be justified in considering this claim as abandoned. Nevertheless, in the interest of judicial economy and efficiency, we state that the plaintiff may not avail herself of the doctrine of detrimental reliance because any such reliance was unjustified.

9. Defendant Metropolitan is, in fact, no longer an active party in this litigation. By an agreement dated October 16, 1985, the three parties assented to the dismissal of the action against Metropolitan in consideration of Metropolitan's promise to pay the plaintiff the proceeds under the policy involved, less any unpaid balance on the judgment note executed by the plaintiff in favor of Metropolitan, should this Court rule in favor of the plaintiff.