NATIONAL MEDICAL ENTERPRISES, INC., d/b/a Century City Hospital, Plaintiff,

v.

Donna SHALALA, Secretary of Health and Human Services,[1] Defendant.

Civ. A. No. 91–3129.

United States District Court, District of Columbia.

July 16, 1993.

David T. Smorodin, Eaton, McClellan & Allen, Washington, DC, for plaintiff.

Stuart Langbein, Dept. of Health & Human Services, Baltimore, MD, for defendant.

---

1. Ms. Shalala, the current Secretary of Health and Human Services ("HHS"), has been substituted for her predecessor, Louis W. Sullivan, pursuant to Fed. Rule Civ. Pro. 25(d).

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In this action, plaintiff National Medical Enterprises, Inc., has challenged a decision by the Secretary of Health and Human Services ("the Secretary") regarding reimbursement for certain hospital costs for Medicare beneficiaries. Before the Court are plaintiff's and defendant's cross motions for summary judgment. For the reasons which follow, we deny plaintiff's Motion for Summary Judgment and grant defendant's.

### I. Background

Plaintiff, National Medical Enterprises, Inc., is a corporation which owns acute care hospitals, including Century City Hospital ("the Hospital") located in Los Angeles, California. Century City Hospital has an agreement with defendant, the Secretary of HHS, to provide hospital services to persons eligible for Medicare pursuant to the Medicare Act, 42 U.S.C. § 1395 et seq.[2] As a designated "provider of services" under the Medicare Act, see 42 U.S.C. § 1395x(u), the Hospital is entitled to reimbursement for the "reasonable cost" of rendering those services. See 42 U.S.C. § 1395f(b).[3]

In the present case, plaintiff alleges that defendant failed to properly reimburse it for its costs of administering intravenous ("IV") therapy to Medicare beneficiaries. The costs in question cover the salaries and benefits of a team of nurses responsible for preparing, administering, and monitoring IV therapy at the Hospital. Defendant reimbursed these IV therapy administration costs as routine services rather than ancillary services. The amount in controversy is $215,000 and $191,000 for fiscal years 1982 and 1983, respectively.

The central issue is whether these IV therapy costs should have been allocated to a "routine cost center" or an "ancillary cost center." It is not disputed that when a provider of services elects to use the "departmental method" of cost apportionment, as it did in the instant case, it must assign its costs in its annual cost report to one of these two categories. See 42 C.F.R. § 405.-452(a)(1983).[4] Routine services include "the regular room, dietary, and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. § 405.452(b). Ancillary services are defined as "the services for which charges are customarily made in addition to routine services." Id.[5]

The distinction between these cost centers is important for reimbursement purposes. Routine services are reimbursed on a per diem basis. Thus, if 10% of the patients using IV services on a given day are Medicare beneficiaries, the Hospital will be reimbursed by HHS for 10% of its routine service costs on that day. See Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl's Mem.") at 7–8. Ancillary services, by con-

---

**2.** This case only involves Part A reimbursement (Hospital Insurance Benefits).

**3.** On October 1, 1983, the method of Medicare reimbursement was changed for cost years beginning after that date so that payment is now made prospectively according to a predetermined and specific rate. See 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Since the fiscal years at issue predate this change, the former "reasonable cost" method of reimbursement applies in this case.

**4.** Since the costs in question are from fiscal years 1982 and 1983, all references to the regulations are to the 1983 Code of Federal Regulations.

**5.** The Provider Reimbursement Manual ("PRM"), used by HHS in allocating costs, further distinguishes ancillary and routine services.

PRM § 2202.6 discusses routine services, explaining that

> Inpatient routine services in a hospital or skilled nursing facility are those services included by the provider in a daily service charge—sometimes referred to as the 'room and board' charge.... Included in routine services are the regular room, dietary and nursing services, minor medical and surgical supplies, medical social services, psychiatric social services, and the use of certain equipment and facilities for which a separate charge is not customarily made.

Ancillary services, defined in § 2202.8, include laboratory, radiology, drugs, delivery room ..., operating room ..., and therapy services (physical, speech, occupational). Ancillary services may also include other special items and services for which charges are customarily made in addition to a routine service charge.

trast, are reimbursed on a utilization basis. Thus, if the Medicare beneficiaries account for 20% of the charges for the services (even if they represent only 10% of the patients), then the Hospital will be reimbursed for 20% of its costs. *See* Pl's Mem. at 7.

Plaintiff claims that the Secretary has improperly categorized the nursing costs affiliated with administering IV therapy as routine services rather than as ancillary services. In its cost report for fiscal years ending May 31, 1982 and 1983, plaintiff allocated its costs for its IV therapy services to an ancillary service center. Pursuant to 42 C.F.R. § 413.20, the Hospital's cost reports were reviewed by its fiscal intermediary, the Mutual of Omaha Insurance Company. The intermediary reclassified the costs for administering the IV services, namely the nurses' salaries and benefits, in a routine cost center. The other costs associated with IV therapy, such as equipment and supplies, were not moved from the ancillary cost center where they remained.

Plaintiff proceeded to appeal the intermediary's adjustments to the Provider Reimbursement Review Board ("PRRB"), pursuant to 42 C.F.R. § 1395oo(a). On August 19, 1991, the PRRB reversed the intermediary's decision by a three-to-two majority, declaring that

> apportioning the costs of the IV therapy personnel salaries and benefits on the basis of the relative charges for IV therapy services is the most accurate method of determining the relative costs for IV therapy services used by Medicare and non-program beneficiaries. The majority finds, therefore, that the IV therapy nurses' salaries and benefits should be included in the IV therapy cost center for cost apportionment purposes.

Administrative Record ("AR") at 32–33. In reaching this decision, the PRRB noted that two other intermediaries, Blue Cross of California and Aetna Life Ins. Co., had approved the classification of salaries and benefits in an IV therapy cost center for two other acute care hospitals located a few miles away from plaintiff's. *See* AR at 32.

The decision of the PRRB was reversed on October 18, 1991 by the Deputy Administra-

tor of the Health Care Financing Administration ("Deputy Administrator"), acting on behalf of the Secretary. The Deputy Administrator relied on section 2203 of the Provider Reimbursement Manual, HIM–15 ("PRM"), which prohibits classification of costs in an ancillary cost center when the "common or established practice of providers of the same class ... in the same State is to include the item or service in the routine service charge." *See* AR at 5. Relying on *Loma Linda Univ. v. Schweiker*, Medicare & Medicaid Guide (CCH) ¶ 31,650 at 10,148 (C.D.Cal. Dec. 14, 1981), in which the district court held that the "customary and prevailing practice among hospitals in California is to include intravenous therapy services within the routine nursing service and not to separately bill for such services," the Administrator concluded that Century City Hospital's IV therapy services must also be categorized as routine services. AR at 6.

Plaintiff's Complaint, challenging the Deputy Administrator's decision, was timely filed with this Court pursuant to 42 U.S.C. § 1395oo(f)(1).

## II. *Discussion*

In reviewing plaintiff's appeal from the Deputy Administrator's determination, we are bound by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq. See* 42 U.S.C. § 1395oo(f)(1). The APA standard of review provides, in relevant part, that agency actions, findings, or conclusions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(A), (B), and (E); *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

Our review of the Deputy Administrator's decision is a narrow one. "It is well settled ... that the Secretary's decisions interpreting the Medicare Act are entitled to 'great deference.'" *Sentara–Hampton General Hosp. v. Sullivan,* 980 F.2d 749, 755

(D.C.Cir.1992) (citation omitted). "Our limited role is to ensure that the Secretary's regulations are consistent with the statute, reasonably interpreted and consistently applied ... [and] to ensure that the findings in particular cases are not arbitrary and capricious and are supported by substantial evidence." *Villa View Community Hospital, Inc. v. Heckler,* 728 F.2d 539, 543 (D.C.Cir. 1984). We are not permitted to substitute our judgment for that of the agency. *Lloyd Noland Hosp. and Clinic v. Heckler,* 762 F.2d 1561, 1565 (11th Cir.1985).

Plaintiff, for several distinct reasons, challenges both the Deputy Administrator's findings and the rule upon which it is based. First, plaintiff alleges that defendant's decision is arbitrary and capricious because it is contrary to provisions in the Medicare Act and Medicare regulations. Second, plaintiff maintains that the decision was not based on substantial evidence in the record. Third, plaintiff contends that the ruling denies plaintiff's equal protection in treating the Hospital differently from other similarly situated hospitals. Defendant has filed a Motion for Summary Judgment to affirm the decision of the Deputy Administrator. Because there is no dispute as to any material fact, summary judgment is appropriate. *See* Fed. R.Civ.P. 56(c).

### A. Arbitrary and Capricious

Plaintiff alleges that both the Deputy Administrator's decision, as well as the rule upon which it was based, are arbitrary and capricious because they contravene certain Medicare statutes and regulations.

In reviewing these allegations, plaintiff has the "burden of demonstrating fault with the Deputy Administrator's decision." *Saint Mary of Nazareth Hospital Center v. Schweiker,* 718 F.2d 459, 466 (D.C.Cir.1983). When the decision being reviewed concerns an agency's interpretation of its own regula-

tions, there are strong reasons to defer to administrative expertise. *See Psychiatric Institute of Washington, D.C., Inc. v. Schweiker,* 669 F.2d 812, 813–814 (D.C.Cir. 1981) (citing *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 556, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980)). The test is whether the agency's interpretation is within a range of possible interpretations that could be adopted. *See id.*

### 1. Deputy Administrator's Decision

■ Plaintiff first makes the very general allegation that the Deputy Administrator's decision violates the Medicare statutory prohibition against cost-shifting. Both 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.53(a) prohibit non-Medicare patients from bearing the costs of Medicare beneficiaries.[6] Plaintiff alleges that the decision to reallocate the IV therapy nursing costs violates these provisions by shifting costs to non-Medicare patients. *See* Pl's Mem. at 15–16.

There is no evidence in the record, however, to establish that the calculation of nursing costs on a *per diem* basis would unjustly burden non-Medicare patients. In fact, nursing costs are generally classified as routine services under 42 C.F.R. § 405.452(b) and PRM § 2202.6. *See* note 5 *supra* and accompanying text. While it may be the case that certain patients utilize nursing costs to a greater or lesser extent, these costs have been presumed to average out.

> The calculation of routine average cost per diem assumes that all patients receive roughly the same services per day at roughly the same cost per patient. Everyone knows that this is not true in individual cases, but for reasons of administrative simplicity it is assumed that the extreme divergences from the mean balance out.

*Saint Mary of Nazareth Hospital Center,* 718 F.2d at 471. Plaintiff has failed to show

---

**6.** The statutory provision, 42 U.S.C. § 1395x(v)(1)(A), establishes in relevant part that the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs ...

The corresponding regulation provides that
Total allowable costs of a provider will be apportioned between program beneficiaries and other patients so that the share borne by the program is based upon actual services received by program beneficiaries.
42 C.F.R. § 413.53(a)(1).

why this presumption should not also apply to IV therapy nursing costs.

Plaintiff also alleges that the Deputy Administrator acted improperly in reclassifying a subset of the IV therapy costs. Because PRM §§ 2203 and 2202.8 refer to "items *and* services" allocated to cost centers,[7] plaintiff would have us believe that all costs affiliated with a cost center must be treated alike. *See* Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl's Reply") at 8.

We find this reading strained and misleading. As defendant notes, the remaining provisions in PRM § 2203 refer to "items *or* services," which would indicate that charges may be separated. *See* Defendant's Brief in Reply to Plaintiff's Reply Memorandum ("Def's Reply") at 5. Moreover, a subset of charges are often reclassified for purposes of cost allocation even though they are affiliated with a particular cost center. *See, e.g., Doctors Hosp. v. Blue Cross Assoc.*, Medicare & Medicaid Guide (CCH) ¶ 30,952 at 9928–29 (PRRB Dec. No. 81–D22) (aff'd without op. by HCFA Admr. Dec., Apr. 24, 1981) (holding that medication nurses, even though affiliated with a pharmacy cost center, were properly reclassified in a routine cost center). Accordingly, we fail to find the Deputy Administrator's reclassification invalid on this ground.

2. *PRM § 2203*

█ Plaintiff has also suggested that PRM § 2203, which provided the basis for the Deputy Administrator's decision, is invalid because it is contrary to various statutory and regulatory provisions. The Provider Reimbursement Manual has been described as a "compilation of interpretive rules" published by the Secretary. *Charter Peachford Hosp., Inc. v. Bowen*, 803 F.2d 1541, 1546 (11th Cir.1986). As such, the Manual is entitled to deference as long as it complies with the regulations HHS has promulgated. *Id.* at 1546–47.

PRM § 2203 provides a three-tiered inquiry as a guide in allocating costs to ancillary or routine cost centers.[8] Because the IV therapy administration costs did not fall into either list of routine or ancillary costs referred to in the first tier, the Deputy Administrator turned to the second level of inquiry which looks to state practice in determining whether a cost may be treated as an ancillary cost.

Plaintiff raises three concerns with the inquiry into state practice. First, plaintiff levies the same challenge of improper cost-shifting as it did against the Deputy Administrator's findings. Plaintiff suggests that the state practice inquiry may produce irrational results if it were applied to hospitals in a metropolitan area straddling several states or to a hospital in a particularly depressed economic area. *See* Pl's Mem. at 28. Again, however, plaintiff has failed to produce any evidence supporting its allegations. We therefore cannot find that PRM § 2203 necessarily produces irrational results on this basis.

Plaintiff further contends that PRM § 2203 is inconsistent with 42 C.F.R. § 405.-452(b). That regulation defines "ancillary

7. Specifically, plaintiff refers to the first sentence in PRM § 2203, providing that

· The cost of those *items and services* specifically classified as routine in § 2202.6 are always considered routine service costs, and the costs of those specifically classified as ancillary in § 2202.8 are always considered ancillary service costs ... (emphasis added).

Plaintiff also refers to the line in PRM § 2202.8 that "[a]ncillary services may also include other special *items and services* ..." (emphasis added).

8. The first tier parallels 42 C.F.R. § 405.452(b) by referring to lists of costs in PRM § 2202.6 and PRM § 2202.8 which must always be considered routine or ancillary. *See* note 4 *supra.* For costs which do not fall into either category, the second level of inquiry provides that

A separate ancillary charge for a particular item or service other than those listed as ancillary in § 2202.8 is not recognized, and the cost of the item or service is not included in an ancillary cost center, where the common or established practice of providers of the same class ... in the same State is to include the item or service in the routine service charge.

The third tier provides that

Where there is no common or established classification of an item or service as routine or ancillary among providers of the same class in the same State, a provider's customary charging practice is recognized so long as it is consistently followed for all patients and does not result in an inequitable apportionment of cost to the program.

services" as "services for which charges are customarily made in addition to routine services.". Plaintiff states that, since "custom" generally refers to a local practice area, PRM § 2203's reference to a statewide standard violates the regulation.

While it is true that Medicare regulations often refer to local service areas, plaintiff ignores references to statewide standards in Medicare regulations. *See* Def's Mem. at 27–28 (referring to regulations concerning wage index components of hospital cost limits and physician charges). Moreover, PRM § 2203's reliance on statewide custom or practice has been upheld by a number of reviewing courts. *See, e.g., Creighton Omaha Regional Health Care Corp. v. Bowen,* 822 F.2d 785 (8th Cir.1987) (remanding for further evidence of state practice pursuant to § 2203); *Charter Peachford Hosp.,* 803 F.2d at 1548 (reviewing state practice for allocating costs of teacher-therapist salaries). The incorporation of statewide custom in PRM § 2203 is therefore not outside the "range of possible interpretations" of 42 C.F.R. § 405.-452(b).

Finally, plaintiff challenges PRM § 2203 as the product of invalid rulemaking.. Plaintiff contends that the rule is "substantive," rather than "interpretive," because it adopts geographic criteria in determining customary practices for cost allocation purposes. As such a substantive rule, plaintiff concludes that § 2203 is void because it was published without notice and comment or a basis-for-purpose statement, as is required for substantive rulemaking under the Administrative Procedure Act (APA). *See* 5 U.S.C. § 553(b).

We disagree with plaintiff's characterization of the Manual provision as a substantive rule. In distinguishing between "substantive" and "interpretive" rules, this Circuit has noted that

> Substantive rules are ones which 'grant rights, impose obligations, or produce other significant effects on private interests,' or which 'effect a change in existing law or policy.' Interpretive rules, by contrast, 'are those which merely clarify or explain existing law or regulations,' are 'essentially hortatory and instructional,' and 'do not

have the full force and effect of a substantive .rules but [are] in the form of an explanation of particular terms.'

*American Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1045 (D.C.Cir.1987) (citations omitted).

It is clear that PRM § 2203 does not add new obligations or rights for hospitals, but provides further guidance in determining when an item or service should be assigned to a routine or ancillary cost center. In so doing, the Manual provision is more accurately characterized as an interpretive rule and is not subject to the APA rulemaking procedures, *see* 5 U.S.C. § 553(b). *See also Creighton,* 822 F.2d at 791 (explaining that the Manual provisions are "interpretive rules" and therefore not subject to the APA rulemaking requirements); *John Muir Memorial Hospital, Inc. v. Schweiker,* 664 F.2d 1337, 1339 (9th Cir.1981); *Columbus Community Hosp., Inc. v. Califano,* 614 F.2d 181, 187 (8th Cir.1980). The Deputy Administrator's reliance on that rule was not, therefore, improper.

**B. Substantial Evidence**

■ Presuming that PRM § 2203 is valid, plaintiff alternatively claims that the Deputy Administrator's reclassification was not based on substantial evidence in the record. As mentioned above, the Administrative Procedure Act provides that the reviewing court shall set aside an administrative decision if it is "unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E).

Plaintiff's primary concern is that the Deputy Administrator's decision was based on findings in a case which was not made part of the record. In his decision, the Deputy Administrator determined that reclassification of IV therapy administration costs was "consistent with the *Loma Linda* case" where "statistics ... based on a survey of approximately 600 providers" "indicated that approximately 75 percent of the hospitals in the State of California customarily include IV therapy administration costs in the Routine Care cost center." AR at 6 (citing *Loma Linda Univ. v. Schweiker,* Medicare & Med-

icaid Guide (CCH) ¶ 31,650 at 10,148 (C.D.Cal. Dec. 14, 1981) (hereinafter "*Loma Linda*")). Because *Loma Linda* was not made part of the record, plaintiff urges this Court to set aside the Deputy Administrator's decision.

We disagree that reliance on *Loma Linda* was invalid. The pertinent Medicare regulation permits reference to prior cases even though they are not in evidence. In addressing the Administrator's decision-making process, 42 C.F.R. § 405.1875(g)(4) provides that

> The Administrator may rely on prior decisions of the Board, the Administrator and the courts, and other applicable law, *whether or not cited by the parties and HCFA.*

(emphasis added). The PRRB has, in fact, based several other decisions on the *Loma Linda* findings. *See, e.g., Catholic Medical Center (Manchester, N.H.) v. Blue Cross Ass'n/N.H./Vt. Health Service,* PRRB Hearing Dec. No. 83–D10 (Nov. 24, 1982), *reprinted in* Medicare & Medicaid (CCH), ¶ 32,338 at 9680 (relying on *Loma Linda* to uphold the intermediary's reclassification of IV therapy costs to a routine cost center). There is no reason, therefore, that the Deputy Administrator acted improperly in doing so here.

Even if reliance on the decision is permissible, plaintiff questions the legitimacy of the data used in *Loma Linda.* The statistics in *Loma Linda* were taken from surveys of cost reports taken by two California intermediaries. *See Loma Linda University Medical Center v. Blue Cross Association/Blue Cross of So. Cal.,* PRRB Dec. No. 80–D3 (Jan. 3, 1980), *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 30, 448 at 9748. Plaintiff first questions the accuracy of these findings, giv-

en the possible bias of the collectors of the data. *See* Pl's Reply at 11. We fail to see, however, why the cost reports submitted to the intermediaries should necessarily contain inaccurate information or be inaccurately reported.

Second, plaintiff maintains that the data is unreliable because it is outdated. While it is true that *Loma Linda*'s statistics are taken from 1977 cost reports, five years before the fiscal years presently under review, plaintiff has not presented sufficient evidence to show that the customary practice among state hospitals has changed.[9] We therefore find that the Deputy Administrator's decision was based upon substantial evidence.

## C.   Equal Protection

■ Finally, plaintiff contends that the Hospital's right to equal protection has been violated because it was treated differently from two other similarly situated hospitals. In considering a challenge where there is no suspect classification involved, government action may be upheld if there is a rational basis for the decision. *See Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174–76, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980).

We find that defendant has raised a satisfactorily rational reason for the discrepancy. Plaintiff's equal protection argument is, in fact, based on the claim that it was treated differently from only one other hospital, Brotman Medical Center ("Brotman").[10] Defendant has now admitted that it made a mistake in approving Brotman's classification and that it would take measures to rectify that action were it not barred from reopening the cost report after a three year period. *See* Declaration of Charles R. Booth ("Booth Declaration") ¶¶ 5, 7, attached to Def's Re-

9.   The only evidence plaintiff provides to contradict *Loma Linda* is the practice of two California providers: St. John's Hospital and Health Center in Santa Monica, California, and Brotman Medical Center in Culver City, California, both of which classified IV therapy administration costs in an ancillary cost center. Plaintiff concedes, however, that St. John's intermediary, Blue Cross, recategorized the costs as routine costs upon reviewing the provider's cost report. *See* Pl's Reply at 9, n. 3. With regard to the second hospital, the Secretary has admitted that such classification occurred, but states that it was a

mistake that will be reversed. *See* Def's Mem. at 43.

Even if two hospitals were permitted to classify the services in an ancillary cost center, we still do not find that the practice of two hospitals is sufficient to overturn *Loma Linda*'s holding based on a survey of 450 hospitals.

10.   As mentioned in note 9 *supra,* plaintiff has since conceded that it was mistaken with respect to the intermediary's classification of costs at St. John's.

ply.[11]  While admission of a mistake is not necessarily a satisfactory explanation, it is nevertheless a rational one.  Accordingly, we reject plaintiff's equal protection challenge.

*Conclusion*

Having reviewed plaintiff's and defendant's Motions for Summary Judgment, their Oppositions, and the record, we fail to find that the Secretary's decision was arbitrary and capricious, or otherwise contrary to law, unsupported by substantial evidence, or contrary to plaintiff's right to equal protection under the law.

Accordingly, we deny plaintiff's Motion, grant defendant's Motion, and affirm the decision below.  An Order consistent with the above has been entered this day.

### ORDER

Upon consideration of plaintiff's and defendant's Motions for Summary Judgment, their Oppositions thereto, and the entire record herein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is by the Court this 16th day of July, 1993,

ORDERED that plaintiff's Motion is denied;  and it is

ORDERED that defendant's Motion is granted;  and it is

ORDERED that the decision by the Secretary of Health and Human Services in this matter is affirmed;  and it is

FURTHER ORDERED that the above cause is dismissed with prejudice.

---

**11.**  Plaintiff has filed a Motion to Strike this declaration on the grounds that it is not part of the administrative record under review.  While it is generally true that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1972), there are a number of exceptions to this rule.  Chief among these is a court's review of a constitutional claim.  *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 493,

111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991) (noting *de novo* review of constitutional claim).  In reviewing a constitutional claim to an agency's decision, a court "may make an independent assessment of the facts and the law" and "may consider additional affidavits which were not before the agency upon administrative review." *Rydeen v. Quigg*, 748 F.Supp. 900 (D.D.C.1990), *aff'd without op.*, 937 F.2d 623 (Fed. Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992).  Accordingly, we deny plaintiff's Motion to Strike the Booth Declaration.